# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Vikram Bhatia, D.D.S., et al. on
behalf of themselves and all
others similarly situated,

Civil No. 16-1304 (DWF/BRT)

Plaintiffs,

v.

3M Company,

**MEMORANDUM
OPINION AND ORDER**

Defendant.

---

Amanda M. Williams, Esq., Daniel E. Gustafson, Esq., Daniel C. Hedlund, Esq.,
David A. Goodwin, Esq., and Eric S. Taubel, Esq., Gustafson Gluek PLLC; and Korey A.
Nelson, Esq., Warren T. Burns, Esq., and William B. Thompson, Esq., Burns Charest
LLP, co-lead counsel for Plaintiffs.

James J. Pizzirusso, Esq., Hausfeld LLP, Plaintiffs' Executive Committee Chairperson.

Brian C. Gudmundson, Esq., Zimmerman Reed, PLLP; Charles D. Gabriel, Esq.,
Chalmers Pak & Burch, LLC; Edward Anthony Wallace, Esq., Wexler Wallace LLP;
Jordan M. Lewis, Esq., Jordan Lewis, P.A.; Joseph S. Sauder, Esq., McCune Wright
LLP; Paul K. Scarlato, Esq., Goldman Scarlato & Penny, P.C.; William M. Audet, Esq.,
Audet & Partners, LLP; and Yvonne M. Flaherty, Esq., Lockridge Grindal Nauen PLLP,
Plaintiff's Executive Committee.

Alan L. Rosca, Esq., Peiffer Rosca Wolf Abdullah Carr & Kane; Amanda M. Williams,
Esq., Daniel E. Gustafson, Esq., Daniel C. Hedlund, Esq., David A. Goodwin, Esq., and
Eric S. Taubel, Esq., Gustafson Gluek PLLC; Bradley A. Winters, Esq., David S.
Corwin, Esq., and Vicki L. Little, Esq., Sher Corwin Winters LLC; Bryan L. Bleichner,
Esq., Chestnut Cambronne PA; Bryce Daniel Riddle, Esq., Zimmerman Reed, LLP;
Charles D. Gabriel, Esq., Chalmers Pak & Burch, LLC; Daniel H. Charest, Esq., Korey
A. Nelson, Esq., William B. Thompson, Esq., and Warren T. Burns, Esq., Burns Charest
LLP; Edward Anthony Wallace, Esq., Wexler Wallace LLP; Garrett D. Blanchfield, Jr.,
Esq., and Roberta A. Yard, Esq., Reinhardt Wendorf & Blanchfield; James J. Pizzirusso,
Esq., and Katie Rose Beran, Esq., Hausfeld LLP; Jeffrey D. Bores, Esq., Chestnut
Cambronne, PA; John R. Parker, Jr., Esq., Cutter Law, P.C.; Joseph G. Sauder, Esq.,
McCune Wright LLP; Katrina Carroll, Esq., and Kyle Alan Shamberg, Esq., Lite

DePalma Greenberg LLC; Ling Y. Kuang, Esq., and William M. Audet, Esq., Audet & Partners, LLP; Marc H. Edelson, Esq., Edelson & Associates, LLC; Mark K. Yarnoff, Esq., The Kehoe Law Firm; and Paul K. Scarlato, Esq., Goldman Scarlato & Penny, P.C., counsel for individual Plaintiffs.

Laura Reilly, Esq., Tyler A. Young, Esq., and Wendy J. Wildung, Esq., Faegre Baker Daniels LLP, counsel for Defendant.

---

## INTRODUCTION

This matter is before the Court on a Partial Motion to Dismiss and Strike Plaintiffs' Consolidated Amended Complaint (the "Amended Complaint") brought by Defendant 3M Company ("3M" or "Defendant") (Doc. No. 87).  For the reasons set forth below, the Court grants in part and denies in part the motion.

## BACKGROUND

This case involves a 3M product, the Lava Ultimate CAD/CAM Dental Restorative ("Lava Ultimate").  Lava Ultimate is a product designed for dentists to use in making customized dental restorations, such as veneers, inlays, onlays, and crowns.  A dental crown is a tooth-shaped cap that completely covers a tooth or a dental implant. (Am. Compl. ¶ 55.)  A crown can be made from Lava Ultimate with a computer-aided design and computer-aided manufacturing machine ("CAD/CAM").  (*Id*. ¶ 60.)  A dentist uses the CAD/CAM machine to take a digital image of the patient's tooth and mouth and then mill the Lava Ultimate dental block into a customized crown.  (*Id*.)  This process allows the procedure to take place in a single office visit.

In January 2011, the Food and Drug Administration ("FDA") approved Lava Ultimate as a Class II medical device for indicated uses of "inlays, onlays, veneers, and

full crown restorations, including crowns on implants." (*Id*. ¶¶ 69, 71-72.) 3M then released Lava Ultimate into the market. (*Id*. ¶ 73.) Plaintiffs allege that 3M marketed Lava Ultimate as, for example, especially suitable for crowns, fracture-resistant, durable, aesthetically pleasing, convenient, and more economical. (*Id*. ¶¶ 73-85.) In addition, 3M represented that Lava Ultimate could be used for permanent, adhesive, single-tooth restorations, including crowns. (*Id*. ¶ 91.)

In this action, Plaintiffs, who are all dentists or dental practices, allege that crowns made using Lava Ultimate material suffer from an inherent defect, namely that they have a propensity to "debond" from teeth at higher rates than other crown material. Plaintiffs contend that Lava Ultimate loses its adhesive properties after being exposed to conditions normally present in patients' mouths. (*Id*. ¶ 88.) Plaintiffs also argue that they have shouldered the costs associated with the defective crowns.

3M ultimately removed Lava Ultimate from the market for use in crowns (*id*. ¶ 96), but it denies any inherent defect in the product. Instead, 3M contends that the product worked well for all but a small percentage of dentists. On June 12, 2015, 3M sent a letter to dentists stating: "[3M] is removing the crown indication for Lava Ultimate CAD/CAM Restorative Product because crowns are debonding at a higher-than-anticipated rate." (*Id*.) 3M sent the following warning: "**IMPORTANT: *Do not use Lava Ultimate restorative for any type of crown because there exists a potential for debonding*.**" (*Id*. (emphasis in original).) The FDA classified 3M's letter as a Class II recall, which is defined as: "a situation in which use of, or exposure to, a violative

product may cause temporary or medically reversible adverse health consequences or where the probability of serious adverse health consequences is remote." (*Id*. ¶ 97.)

Plaintiffs filed their Amended Complaint, seeking a putative nationwide class action or, in the alternative, thirteen putative statewide subclasses of dentists and dental practices who purchased Lava Ultimate and used it to apply dental crowns between January 1, 2011 and June 12, 2015. In the Amended Complaint, Plaintiffs bring roughly 70 separate claims for statutory fraud, breach of express and implied warranties, unjust enrichment, and common-law fraud under 13 states' statutory schemes, as well as a claim under the federal Magnuson-Moss Warranty Act.

In general, Plaintiffs allege that they: purchased Lava Ultimate blocks and seated them for dental crowns (*id*. ¶¶ 11-49); purchased Lava Ultimate after having received and reviewed various marketing materials touting Lava Ultimate's use in crowns (*id*. & ¶ 86); relied on 3M's representations about Lava Ultimate's suitability for crowns (*id*. ¶¶ 11-49); reported crowns that debonded to either 3M or a 3M sales representative (*id*.); and suffered injury by repairing or replacing the crowns (*id*. ¶¶ 99-102). Plaintiffs seek compensatory damages for the repair or replacement costs of Lava Ultimate-based crowns and for the alleged loss to business reputation and practice, disgorgement of profits, statutory penalties, an injunction from "continuing to sell, market, or distribute Lava products for use in crowns," punitive damages, and attorney fees and costs. (*See generally* Am. Compl. and Prayer for Relief.)

Plaintiffs allege, among other things, that 3M breached an express warranty. 3M acknowledges that Lava Ultimate products came with an express warranty. Specifically,

4

3M points to a ten-year express warranty that covers Lava Ultimate-based restorations,

including crowns, and that disclaims other express or implied warranties.  3M insists that

any dispute between dentists and 3M over the performance of Lava Ultimate is governed

by the express warranty and that Plaintiffs' other remaining legal theories are red

herrings.[1]  In support, 3M points to the following "10 Year Limited Warranty":

> **Limited Warranty and Limited Remedy**
>
> 3M ESPE warrants for 10 years from date of placement that restorations made from Lava™ Ultimate CAD/CAM Restorative will not fracture if fabricated using a 3M ESPE recommended milling machine in strict compliance with approved indications and instructions for use.  3M ESPE makes no other warranties including, but not limited to, any implied warranty of merchantability or fitness for a particular purpose.

(Doc. No. 91 ("Wildung Decl.") ¶ 2, Ex. A (at Doc. No. 93); *see also* Am. Compl. ¶ 78

(referencing a "10-year warranty").)  3M's webpages, which are cited in the Amended

Complaint, also reference a warranty.  (*See* Am. Compl. ¶ 76 n.3; ¶ 80 n.8; and ¶ 85 n.12;

Doc. No. 114 ("2d Wildung Decl.") ¶¶ 4, 5, 6 & Exs. C, D, E.)  In addition, 3M submits

that the following text was contained in the original Instruction for Use for 3M's Lava

Ultimate:

> **10 Year Limited Warranty**
> **3M ESPE Lava Ultimate CAD/CAM Restorative**
> **Limited Warranty and Limited Remedy:**
> 3M ESPE warrants for 10 years from date of placement that restorations made from Lava Ultimate CAD/CAM restorative will not break if fabricated using a 3M ESPE recommended milling machine in strict compliance with approved indications and instructions for use.  3M ESPE

---

[1]    3M does not move to dismiss Plaintiffs' breach-of-express-warranty claims and maintains that this case is, at its core, an express warranty case.

makes no other warranties including, but not limited to, any implied warranty of merchantability or fitness for a particular purpose.

3M ESPE's sole obligation and the customers' sole remedy in the event of any breakage of the restoration shall be limited to the replacement of the Lava Ultimate block used to fabricate the milled restoration, or at 3M ESPE's option, reimbursement of Lava Ultimate block purchase price. This warranty does not cover breakage resulting from accident or misuse.

**Limitation of Liability**
Except where prohibited by law, 3M ESPE will not be liable for any loss or damages arising from this product, whether direct, indirect, incidental or consequential, regardless of the theory asserted, including warranty, contract, negligence or strict liability.

(2d Wildung Decl. ¶ 3, Ex. B.)

3M now moves to dismiss Plaintiffs' implied-warranty, unjust enrichment, fraud and related statutory claims under Federal Rule of Civil Procedure 12(b)(6) and to strike Plaintiffs' punitive-damages allegations under Federal Rule of Civil Procedure 12(f).[2]

## DISCUSSION

## I.    Legal Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir.

---

[2]    Plaintiffs are no longer pursuing their claims under the California Consumer Legal Remedies Act (California Count I), the Song-Beverly Consumer Warranty Act (California Count IV), or the Missouri Merchandising Practices Act (Missouri Count I). Therefore, those claims are properly dismissed.

1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).  A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6).  *Porous Media Corp. v. Pall Corp.,* 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555.  As the United States Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly. Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

In addition to the pleading standard explained by the Supreme Court in *Twombly* and *Iqbal*, Federal Rule of Civil Procedure 9(b) requires "particularity" when pleading "fraud or mistake." Fed. R. Civ. P. 9(b).  "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id*.  The purpose of Rule 9(b) is to provide defendants with sufficient notice of the allegations so that they may be able to respond specifically "to potentially damaging allegations of immoral or criminal conduct." *Abels v. Farmers Commodities Corp*., 259 F.3d 910, 920 (8th Cir. 2001).  The

rule must be read in harmony with the principles of notice pleading. *BJC Health Sys. v. Columbia Cas. Co*., 478 F.3d 908, 917 (8th Cir. 2007) (citation omitted).

To satisfy Rule 9(b)'s requirement that the circumstances constituting alleged fraud be stated with particularity, "the complaint must plead the 'who, what, where, when, and how' of the alleged fraud." *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009) (citation omitted); *see also Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 549-50 (8th Cir. 1997). The level of particularity depends upon the nature of the case and the relationship between the parties. *BJC Health Sys.*, 478 F.3d at 917. Where, for example, a plaintiff alleges a systematic practice of fraudulent activities or representations over an extended period of time, the plaintiff need not allege the specific details of every fraudulent act, but must still plead some representative examples of the allegedly fraudulent conduct with sufficient particularity. *See Allstate Ins. Co. v. Linea Latina De Accidentes, Inc*., 781 F. Supp. 2d 837, 846 (D. Minn. 2011) (finding allegations regarding fraudulently-submitted insurance claims sufficiently particular where plaintiffs identified each claim that was allegedly fraudulent, the claim number, and the date of the claim). "Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002) (citation omitted).

Rule 9(b) pleading requirements apply to all claims premised on fraud, including "claims of false advertising, deceptive trade practices, unlawful trade practices, and consumer fraud." *Select Comfort Corp. v. Sleep Better Store, LLC*, 796 F. Supp. 2d 981, 983 (D. Minn. 2011); *see also* 5A Charles Alan Wright et al., Federal Practice &

Procedure § 1297 (3d ed. April 2017 update) ("Even when a plaintiff is not making a fraud claim, courts will require particularity in the pleading if the cause of action is premised on fraudulent conduct.").[3]

Further, the Court may strike from a pleading any "impertinent" matter. Fed. R. Civ. P 12(f). This includes an improperly pleaded claim for punitive damages. *See Engele v. Indep. Sch. Dist. 91*, 846 F. Supp. 760, 768 (D. Minn. 1994).

## II.    Choice of Law

As an initial matter, Plaintiffs submit that this case arises under circumstances that make the application of Minnesota law to a nationwide class appropriate and, therefore, that the Court need only address the Minnesota claims at this time. 3M disagrees that Minnesota law would govern a nationwide class and argues the present motion under each of the relevant state's law.

The Court concludes that it is premature to apply Minnesota law to all of the named Plaintiffs' claims in this case. This case is before the Court on a motion to dismiss. Only three of the individual Plaintiffs are asserting claims under Minnesota law. In addition, Plaintiffs ask the Court to rule without the benefit of a factual record. 3M correctly points out that whether out-of-state plaintiffs can assert a claim under

---

[3]    Courts have recognized that Rule 9(b) applies to claims under consumer-protection statutes when those claims are grounded in allegations of fraud. *E.g.*, *E-Shops Corp. v. U.S. Bank Nat'l Ass'n*, 795 F. Supp. 2d 874, 878-79 (D. Minn. 2011) (Minnesota statutory claims); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (California statutory claims); *Gonzalez v. Pepsico, Inc.*, 489 F. Supp. 2d 1233, 1247 (D. Kan. 2007) (Kansas statutory claim); *Castro v. Sovran Self-Storage*, 114 F. Supp. 3d 204, 219 n.12 (D.N.J. 2015) (New Jersey consumer fraud claims).

Minnesota law is a fact-intensive question. *See In re Nat'l Hockey League Players'*

*Concussion Injury Litig.*, Civ. No. 14-2551, 2015 WL 1334027, at *15-16 (D. Minn.

Mar. 25, 2015) (explaining that without discovery and a fuller record, a decision on

choice-of-law would be premature and better considered at a later stage).  For purposes of

this motion, the Court will analyze 3M's arguments under the relevant states' laws.

### III.    Fraud Claims

3M moves to dismiss numerous fraud and consumer protection claims for a failure

to plead with particularity under Rule 9(b).  These claims include:  Minnesota Consumer

Fraud Act, Minnesota Uniform Deceptive Trade Practices Act, Minnesota Unlawful

Trade Practices Act, Fraud (under the laws of California, Florida, Georgia, Kansas,

Minnesota, Missouri, New Jersey, New Mexico, New York, Pennsylvania, Tennessee,

Texas, and Washington), California Unfair Competition Law, California False

Advertising Law, Florida Unfair and Deceptive Trade Practices Act, Georgia Uniform

Deceptive Trade Practices Act, Kansas Consumer Protection Act, New Jersey Consumer

Fraud Act, New Mexico Unfair Trade Practices Act, and Texas Deceptive Trade

Practices Act-Consumer Protection Act.

3M argues that Plaintiffs have failed to allege even some representative examples

of the fraudulent conduct with requisite particularity.  Plaintiffs disagree and argue that

their allegations are sufficient to allow 3M to prepare a defense.  In addition, Plaintiffs

argue that the Court must consider the factual context of the case, emphasizing that this

case involves allegedly misleading advertising campaigns.  In such cases, Plaintiffs

submit, "the pleadings are not required to provide the date and time of every

communication." *See, e.g.*, *Lehman Bros. Commercial Corp. v. Minmetals Int'l Non-Ferrous Metals Trading Co.*, Civ. No. 94-8301, 1995 WL 608323, at *2 (S.D.N.Y. Oct. 16, 1995) (citation omitted) (addressing Rule 9(b) in a securities fraud case).

### A.    Fraud

Plaintiffs allege fraud claims under the laws of California, Florida, Georgia, Kansas, Minnesota, Missouri, New Jersey, New Mexico, New York, Pennsylvania, Tennessee, Texas, and Washington.  The elements of fraud are similar under all relevant states' laws.[4]  As an example, the elements of fraud under Minnesota law are:  (1) a false representation of a past or existing material fact susceptible of knowledge; (2) made with the knowledge of falsity or made without knowing whether the statement is true or false; (3) an intention to induce reliance on the statement; (4) causation; and (5) damages.  *See Reisdorf v. i3, LLC*, 129 F. Supp. 3d 751, 766 (D. Minn. 2015); *U.S. Bank N.A. v. Cold Spring Granite Co.,* 802 N.W.2d 363, 373 (Minn. 2011).

Here, Plaintiffs allege the following in support of their fraud claims.

. . . Before purchasing the products, [Plaintiff] reviewed various marketing
materials in which 3M touted Lava Ultimate's use in crowns and stated that
the product was appropriate for use in crowns.  For example, he reviewed
3M's representations in marketing materials stating, among other things,
that Lava Ultimate's "innovative characteristics make it especially
impressive for . . . crowns," that Lava Ultimate was indicated for crowns,
and/or similar representations stating that the product was appropriate for
crowns;" [sic] [Plaintiff] relied on 3M's representations about Lava
Ultimate's suitability for crowns, and he (in conjunction with his practice)

---

[4]    The parties do not dispute that the analysis of the fraud claims is generally the same.

purchased Lava Ultimate blocks for use in crowns.  After seeing the high
failure rate of Lava Ultimate, [Plaintiff] complained to 3M and 3M's sales
representative.  3M continually represented that Lava Ultimate was not the
problem and was not defective, instead blaming [Plaintiff's] application
techniques and saying that no other dentist was experiencing debonding
problems.  [Plaintiff] suffered injury from 3M's misrepresentations in
which 3M stated that Lava Ultimate was appropriate for use in dental
crowns because he bore the costs of the product's defect, which include the
various costs associated with reapplying the crown and/or remedying
damage the patient suffered due to the crown's defect.  [Plaintiff's] reliance
on 3M's misrepresentations about Lava Ultimate's suitability for dental
crowns was an immediate cause of the injury-causing conduct because, but
for 3M's misrepresentations, he would not have bought Lava Ultimate.
Moreover, [Plaintiff] would not have purchased Lava Ultimate blocks if he
would have known that the product was not appropriate for crowns.

(Am. Compl. ¶ 27; *see also id*. ¶¶ 28-29.)  The Amended Complaint contains nearly

identical allegations for each Plaintiff.  (*See id*. ¶¶ 11-16 (California; also alleging that

Plaintiff Angela Ferrari reported issues to 3M "over the phone" and "in person" to an

agent of 3M); ¶¶ 17-20 (Florida; also naming a 3M representative); ¶¶ 21-24 (Georgia);

¶¶ 25-26 (Kansas); ¶¶ 27-29 (Minnesota); ¶¶ 30-31(Missouri; referencing "marketing

materials and PowerPoint presentations"); ¶¶ 32-35 (New Jersey; naming 3M

representatives); ¶¶ 36-37 (New Mexico); ¶¶ 38-40 (New York); ¶¶ 41-42 (Pennsylvania:

naming 3M representatives); ¶¶ 43-44 (Tennessee); ¶ 45 (Texas); ¶¶ 46-48

(Washington).)  The Amended Complaint contains additional general allegations about

representations made by 3M in its promotion of Lava Ultimate, including representations

made on product boxes, product instructions, 3M's website, mailers, brochures, industry

magazines, at trade shows and conferences, press releases, and in sponsored "news"

stories.  (*See id*. ¶¶ 73-86.)

Having carefully reviewed the Amended Complaint, and considered the parties' arguments, the Court concludes that Plaintiffs' allegations of fraud lack the particularity required under Rule 9(b).  It is true that where, as here, it is alleged that the misstatements have occurred over a period of time, Plaintiffs are not required to provide the exact date and time of each and every allegedly fraudulent communication.  Even so, Plaintiffs are required to allege "some representative examples of the fraudulent conduct with particularity."  *Select Comfort Corp.*, 796 F. Supp. 2d at 985.  Plaintiffs have not done that.

First, Plaintiffs do not provide sufficient details about the allegedly fraudulent materials they claim to have received or viewed.  Plaintiffs vaguely refer to "various marketing materials" but do not allege facts that demonstrate (or even suggest) what specific marketing materials each Plaintiff viewed and relied upon.  Instead, Plaintiffs offer nearly identical allegations that are repeated for each Plaintiff and that supposedly apply equally to all Plaintiffs.  The recitation of the same general allegations for each Plaintiff is insufficient.[5]

Second, Plaintiffs claim that 3M misrepresented and concealed material facts about Lava Ultimate crowns.  In support, Plaintiffs list numerous statements made by 3M with respect to Lava Ultimate, such as: "'indicated' for crowns," "ideally suited for

---

[5]    Plaintiffs reference a press release dated July 2, 2012 (Am. Compl. ¶ 80), but do not specify which Plaintiff or Plaintiffs, if any, actually viewed and relied on this particular press release.   The same is true of the other marketing materials cited in the Amended Complaint.

implant supported restorations," "perform similarly to or better than glass ceramic and composite materials," "high flexural strength," "especially advantageous for crowns over implants," and "tough material with excellent resiliency." (Am. Compl. ¶ 122.) However, Plaintiffs do not allege how the purported defect in Lava Ultimate—the propensity to debond—rendered the listed representations false or misleading. *See, e.g.*, *Szul v. Flagstar Bank*, Civ. No. 14-14089, 2015 WL 13036942, at *3 (E.D. Mich. June 8, 2015) (noting that plaintiffs failed to explain how an alleged misrepresentation was false or how plaintiffs' reliance on it resulted in an injury). Again, Plaintiffs' allegations in this regard are conclusory.

Third, Plaintiffs' allegations with respect to knowledge and intent are insufficiently specific. Plaintiffs allege that 3M knew that its representations were false or misleading based on the allegations that Plaintiffs reported the debonding issue to 3M. However, on this point, Plaintiffs' allegations are vague and, again, nearly identical for each Plaintiff. (*See, e.g.*, Am. Compl. ¶ 27 ("After seeing the high failure rate of Lava Ultimate, [Plaintiff] complained to 3M and 3M's sales representative. 3M continually represented that Lava Ultimate was not the problem and was not defective, instead blaming [Plaintiff's] application techniques and saying that no other dentist was experiencing debonding problems.").) Plaintiffs also point to paragraphs 89-94 to support the elements of knowledge and intent. However, these allegations are also conclusory, generally referring to an aggressive marketing campaign touting Lava Ultimate as a superior product for use in crowns and asserting that 3M failed to warn about Lava Ultimate's defect. Importantly, Plaintiffs do not provide sufficient details that

would shed light on which Plaintiff or Plaintiffs specifically talked to 3M about debonding, the position of those at 3M they spoke to, what exactly Plaintiffs reported to 3M, when they reported the issue to 3M, or what specifically was discussed during the conversations.[6]  Instead, Plaintiffs again offer nearly identical allegations for each Plaintiff.  Moreover, Plaintiffs do not specify how 3M had "intent to induce."  While intent can be alleged generally, the allegations cannot be conclusory or based on speculation.  *See, e.g.*, *Dunnigan v. Fed. Home Loan Mortg. Corp.*, 184 F. Supp. 3d 726, 740-41 (D. Minn. 2016) (explaining that plaintiffs must allege facts that give rise to a strong inference of fraudulent intent).  Here, Plaintiffs' allegations regarding intent are conclusory as they fail to give rise to a strong inference that 3M intended to mislead.

Finally, Plaintiffs' allegations with respect to reliance are insufficiently specific.  Plaintiffs make the conclusory allegation that they relied on 3M's misrepresentations.  However, Plaintiffs fail to provide requisite specifics, such as which marketing materials specifically encouraged the purchases of Lava Ultimate blocks for use on crowns and whether Plaintiffs relied on those specific materials.  Instead of pleading reliance with particularity, Plaintiffs rely on the same vague and nearly identical allegations for each Plaintiff.

---

[6]    While most Plaintiffs allege that they reported debonds to 3M without identifying the individuals at 3M, a few Plaintiffs named the 3M representative with whom they lodged their complaints.  (*See, e.g.*, Am. Compl. ¶¶ 19, 20, 32, 33, 41, 42.)  However, Plaintiffs still provide only very general allegations with respect to the nature of those conversations.

For the above reasons, all of Plaintiffs' fraud and statutory claims that involve elements of fraud are properly dismissed. The latter include: Minnesota Consumer Fraud Act, Minnesota Deceptive Trade Practices Act, Minnesota Unlawful Trade Practices Act, California Unfair Competition Law, California False Advertising Law, Florida Unfair and Deceptive Trade Practices Act, Georgia Uniform Deceptive Trade Practices Act, Kansas Consumer Protection Act, New Jersey Consumer Fraud Act, New Mexico Unfair Trade Practices Act, and Texas Deceptive Trade Practices Act-Consumer Protection Act.

### B.    Motion to Amend

In their opposition, Plaintiffs request leave to amend their Amended Complaint. Plaintiffs make this request without filing a formal motion or attaching a proposed amended complaint. Without the benefit of any showing by Plaintiffs of how they propose to amend the Amended Complaint to satisfy their pleading burdens, the Court cannot determine whether allowing such an amendment is warranted. Therefore, Plaintiffs' informal request to amend is denied. However, because it is plausible that Plaintiffs could amend their fraud claims to address the noted deficiencies, Plaintiffs' fraud claims and related statutory claims are dismissed without prejudice.

### IV.   Claims Seeking Injunctive Relief

3M also moves to dismiss Plaintiffs' claims under four statutes that only permit injunctive relief: California Unfair Competition Law ("California UCL"); Georgia Uniform Deceptive Trade Practices Act ("GDTPA"); Minnesota Deceptive Trade Practices Act ("MDTPA"); and Minnesota Unlawful Trade Practices Act ("MUTPA").

While these claims are properly dismissed for the reasons discussed above, the Court addresses this issue below.

Under the MDTPA, the "sole statutory remedy for deceptive trade practices is injunctive relief." *Gardner v. First Am. Title Ins. Co.*, 296 F. Supp. 2d 1011, 1020 (D. Minn. 2003) (citations omitted); *Damon v. Groteboer*, 937 F. Supp. 2d 1048, 1071 (D. Minn. 2013) ("[T]he Court finds that the Damons do not have a valid [MDTPA] claim for injunctive relief because they have not presented evidence that they face any risk of future harm to themselves."). "Because the MDTPA provides [injunctive] relief for a 'person likely to be damaged,' it provides relief from future damage, not past damage." *Gardner*, 296 F. Supp. 2d at 1020 (citation omitted). In addition, in order to state a claim for injunctive relief under the MUTPA, a plaintiff must allege a threat of future harm to himself. *See Buetow v. A.L.S. Enters., Inc.*, 650 F.3d 1178, 1185 (8th Cir. 2011) (finding that a plaintiff must "prove the threat of future injury" in order to receive injunctive relief under the MUTPA). Similarly, under the GDTPA, the only available remedy is injunctive relief. *See* Ga. Code § 10-1-373 ("A person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable."); *Catrett v. Landmark Dodge, Inc.*, 560 S.E.2d 101, 106 (Ga. Ct. App. 2002) (affirming grant of summary judgment on a GDTPA claim, explaining that injunctive relief is the only remedy permitted by the GDTPA, and noting that by definition injunctive relief provides relief from future wrongdoing). And under the California UCL, the only remedies available are injunctive relief, restitution, and civil penalties, but not monetary damages.

*See Forty Niner Truck Plaza, Inc. v. Shank, CPA*, Civ. No. 11-860, 2011 WL 4386299, at *2 (E.D. Cal. Sept. 20, 2011) ("A claim under [the UCL] is equitable in nature; damages cannot be recovered.").

3M argues that Plaintiffs have not sufficiently pleaded these claims. Plaintiffs argue that 3M's position is premature and that whether a likelihood of future harm exists is properly addressed at summary judgment. In addition, Plaintiffs maintain that ongoing future harm from Lava Ultimate and 3M's alleged misrepresentations is likely. Plaintiffs suggest that possible injunctive relief includes an order: (1) requiring 3M to acknowledge that Lava Ultimate was inherently defective; (2) preventing 3M from reintroducing Lava Ultimate for crown sales; and (3) ordering 3M to correct prior misrepresentations. In addition, Plaintiffs claim that 3M could reintroduce Lava Ultimate back into the market for crown use.

The allegations in the Amended Complaint demonstrate that 3M sent a letter to dentists stating that it was removing the crown indication for Lava Ultimate before this lawsuit was filed and that the FDA classified this letter as a "Class II recall." (Am. Compl. ¶¶ 96-97.) As a Class II medical device, Plaintiffs recognize that Lava Ultimate is subject to FDA regulations. (*Id.* ¶¶ 72, 97.) Thus, 3M maintains that even if it wanted to renew Lava Ultimate's crown indication, it would need to comply with FDA regulations. And significantly, now that Plaintiffs are aware of the alleged defects in Lava Ultimate and 3M's alleged misrepresentations, they cannot show that they are likely to be deceived by such representations in the future. *See Indep. Glass Ass'n, Inc. v. Safelite Grp., Inc.*, Civ. No. 05-238, 2005 WL 3079084, at *2 (D. Minn. Nov. 16, 2005)

(explaining that where plaintiff was aware of deceptive trade practices, he was likely to be vigilant in the future, making injunctive relief inappropriate). The Court concludes that based on the allegations in the Amended Complaint, Plaintiffs cannot make a plausible showing of a likelihood of future harm. *See, e.g.*, *Four D., Inc. v. Duhland Plastics Corp.*, Civ. No. 01-2073, 2002 WL 570655, at *5 (D. Minn. Apr. 15, 2002). Therefore, Plaintiffs' California UCL, GDTPA, MDTPA, and MUTPA claims are properly dismissed with prejudice.[7]

## V.    Breach of Implied Warranty Claims

Plaintiffs allege a claim for breach of implied warranty under the laws of Minnesota, California, Florida, Georgia, Missouri, New Mexico, New Jersey, New York, Pennsylvania, Tennessee, Texas, and Washington.

### A.    Warranty Disclaimer

3M argues that this claim fails as a matter of law because 3M disclaimed any implied warranties for Lava Ultimate products. The law and analysis regarding the disclaimer of implied warranties is similar under the relevant states' laws. The parties refer to Minnesota law in their discussions of whether 3M validly disclaimed all implied warranties. Under Minnesota law, a seller may disclaim implied warranties. Minn. Stat.

---

[7]    With respect to Plaintiffs' California UCL claim, Plaintiffs argue that even if injunctive relief is not available, they would be entitled to other equitable relief, namely restitution. The Court declines to determine whether restitution would be available to California Plaintiffs. Should Plaintiffs attempt to amend this claim to plead with particularity under Rule 9(b), the Court can address the issue of restitution at that time.

§ 336.2-316.  To make such a disclaimer, the seller must do so conspicuously and in writing.  *Id.*[8]  3M argues that its 10-Year Limited Warranty conspicuously presents a disclaimer in the section titled **"Limited Warranty and Limited Remedy"** which states "3M . . . makes no other warranties including, but not limited to, any implied warranty of merchantability or fitness for a particular purpose."  (Wildung Decl. ¶ 2, Ex. A (emphasis in original).)

As an initial matter, Plaintiffs submit that the 10-Year Limited Warranty (and any warranty disclaimer contained therein) is not explicitly referenced in, attached to, or necessarily embraced by the Amended Complaint.  Plaintiffs argue that the Court should refuse to consider any such warranty at this stage because it constitutes extrinsic evidence that has been raised by 3M solely to discredit or contradict the allegations in the Amended Complaint.  Plaintiffs further submit that the Court cannot consider the 10-Year Limited Warranty without converting the present motion to one for summary judgment.

The Court disagrees.  Instead, the Court concludes that it may properly consider the warranty because it is necessarily embraced by and referenced in the Amended Complaint.  The Amended Complaint cites to numerous documents that expressly reference a 10-Year Limited Warranty.  (Am. Compl. ¶¶ 76 n.3, 78, 80 n.8, 85 n.12.)  In addition, the Amended Complaint alleges that 3M "made its representations . . . in the

---

[8]    To disclaim an implied warranty of merchantability, the disclaimer must also mention "merchantability."  Minn. Stat. § 336.2-316.

20

instructions for use" (*id*. ¶ 74), and 3M submits that every version of Lava Ultimate product instructions contained both the 10-Year Limited Warranty and the warranty disclaimer.  (Wildung Decl. ¶ 3, Ex. B.)  Moreover, the Amended Complaint expressly alleges that 3M "provided an *additional* express warranty against fracturing," implying that there was an operative express warranty.  (Am. Compl. ¶ 160 n.16 (emphasis added).)  It is entirely proper for the Court to consider the 10-Year Limited Warranty (and warranty disclaimer) without converting the motion to one for summary judgment. *See Dittmer Props., L.P. v. F.D.I.C*., 708 F.3d 1011, 1021 (8th Cir. 2013) (finding it appropriate to consider agreements that were contemplated by or expressly mentioned in the complaint); *Porous Media Corp.*, 186 F.3d at 1079.

However, Plaintiffs also argue that consideration of any disclaimer is premature because Plaintiffs do not concede its authenticity and there is a lack of foundation regarding the asserted disclaimer.  The Court agrees and declines to dismiss Plaintiffs' breach of implied warranty claims at this early stage of litigation.  The Court requires a more complete record of the foundational facts surrounding the content and distribution of any warranty disclaimer, such as background facts on the creation of the language in the disclaimer (when the language was created), any changes made to the language over time, the documents on which the disclaimer was printed, whether there were different versions of the disclaimer being used, as well as the circumstances surrounding the disclaimer's communication to Plaintiffs.  Should the evidence bear out that the 10-Year Limited Warranty 3M submitted contained a disclaimer that was communicated conspicuously and in writing to each Plaintiff in the form detailed above, it is possible, if

not likely, that Plaintiffs' implied warranty claims will not survive summary judgment.

For now, Plaintiffs' claims for breach of implied warranty are sufficiently pled.[9]

### B.    Privity and Third-Party Beneficiary Status

3M makes an alternative argument for the dismissal of Plaintiffs' claims for

breach of implied warranty under the laws of California, Florida, Georgia, New York,

and Tennessee.  Specifically, 3M argues that these claims fail for a lack of privity

because 3M sold Lava Ultimate to a third-party distributor, who in turn sold the product

to California Plaintiffs.

Under these states' laws, there must be contractual privity between a plaintiff and

a manufacturer to bring an implied warranty claim against the manufacturer.  *See, e.g.*,

*Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (California law);

*In re Seagate Tech. LLC Litig.*, Civ. No. 16-523, 2017 WL 3670779, at *8-9 (N.D. Cal.

Aug. 25, 2017) (Florida law); *Gill v. Blue Bird Body Co.*, 147 F. App'x 807, 809-10 (11th

Cir. June 17, 2005) (Georgia law); *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d

540, 556 (S.D.N.Y. 2016) (New York law); *Americoach Tours, Inc. v. Detroit Deisel

Corp.*, Civ. No. 05-2067, 2005 WL 2335369, at *6-8 (W.D. Tenn. 2005) (Tennessee

law).

---

[9]    Plaintiffs' breach-of-implied-warranty claims include:  California Count VI;
Florida Count III; Georgia Count IV; Minnesota Count V; Missouri Count III; New
Jersey Count II; New Mexico Count III; New York Count IV; Pennsylvania Count II;
Tennessee Count II; and Texas Count III.
       3M does not seek dismissal if Kansas or Washington Plaintiffs' breach-of-implied-
warranty claims.  (Doc. No. 113 at 28 n.14 & 39 n.18.)

Plaintiffs do not dispute that they lack privity in at least most of the relevant states, but instead argue that they can assert an implied-warranty claim as third-party beneficiaries.[10]  In particular, Plaintiffs argue that because they are the ultimate consumers of Lava Ultimate, 3M's warranties were intended to benefit them.  In addition, Plaintiffs assert that 3M knew that Plaintiffs would use Lava Ultimate for crowns, targeted Plaintiffs in its marketing, made statements directly to Plaintiffs about Lava Ultimate's suitability for crowns, and understood that Lava Ultimate must be suitable for dental work.  Further, Plaintiffs argue that this issue is fact-based and inappropriately addressed at the motion to dismiss stage.

In support, Plaintiffs rely mainly on California caselaw.[11]  For example, in *Cartwright v. Viking Industries, Inc.*, the court explained that under California Civil Code § 1559, a third-party beneficiary can enforce a contract made expressly for their benefit. 249 F.R.D. 351, 356 (E.D. Cal. 2008) (noting that the only requirement for third-party beneficiary status is that "the party is more than incidentally benefitted by the contract"); *see also Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1233-34 (S.D. Fla. 2014) (holding that the purchaser of a vehicle could pursue a breach-of-implied-warranty claim as a third-party beneficiary).

---

[10]     The Court notes that New York Plaintiffs argue that they have sufficiently alleged privity because they had specific interactions with a 3M sales representative who represented that Lava Ultimate was appropriate for crowns.  The Court does not reach the merits of this argument at this time.

[11]     Plaintiffs cite to cases in states other than California but rely on and refer back to their arguments made under California law.

3M argues that *Cartwright* and other cases Plaintiffs cite are distinguishable and that no California court has published an opinion recognizing the third-party beneficiary exception in a case such as this, namely, in the context of a consumer claim against a product manufacturer.  3M also argues that other courts, including the Ninth Circuit, have rejected a third-party beneficiary exception to the privity requirement in similar cases. *See, e.g., Clemens*, 534 F.3d at 1024 (affirming dismissal of implied warranty claims for lack of vertical privity; declining to "create a new exception" aside from recognized exceptions); *In re Seagate Tech. LLC Litig.*, 233 F. Supp. 3d 776, 787 (N.D. Cal. 2017) ("Recognizing that federal district courts have reached different conclusions, the Court holds that [finding a third-party beneficiary exception] would be inconsistent with the Ninth Circuit authority.").  Also, in response to Plaintiffs' citation to *Sanchez-Knutson*, 3M points to a more recent court decision rejecting the conclusion reached in that decision.  *See In re Seagate Tech. LLC Litig.*, Civ. No. 16-523, 2017 WL 3670779, at *8-9 (N.D. Cal. Aug. 25, 2017) (applying Florida law) ("[T]his Court declines to create what would appear. . . to be a 'new exception[]' to the privity rule established by the Florida courts.").

Having considered the parties' arguments on this issue, the Court declines to dismiss Plaintiffs' breach-of-implied-warranty claims at this time.  First, the law on the issue of a third-party beneficiary exception to the privity rule is not entirely clear, and Plaintiffs have identified cases that appear to support such an exception.  *See, e.g.*, *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 984 (N.D. Cal. 2014) (noting a lack of a clear holding to the contrary in *Clemens* and concluding that the third-party

beneficiary exception remains viable under California law). Second, in *Clemens*, the Ninth Circuit noted an exception to the privity rule that arises "when the plaintiff relies on written labels or advertisements of a manufacturer." 534 F.3d at 1024. Finally, considering that this case is still in the early stages of litigation and the factual record is not developed, the Court finds that Plaintiffs have alleged sufficient facts to support these claims. Thus, the Court declines to dismiss Plaintiffs' breach-of-implied warranty claims under California, Florida, Georgia, Minnesota, New York, and Tennessee law.

## VI.    Unjust Enrichment Claims

Plaintiffs allege that 3M benefitted unjustly from selling inherently defective Lava Ultimate products, whose value was inflated by 3M's concealment of the debonding defect when used in crowns, and that 3M's enrichment was at the expense of Plaintiffs. (Am. Compl. ¶¶ 189-94.) 3M argues that this claim should be dismissed because Plaintiffs have alleged the existence of an express contract (the express warranty). Thus, 3M argues that the contract and any adequate remedies available thereunder preclude recovery under an unjust enrichment theory. In addition, 3M argues that Plaintiffs have not stated how 3M was unjustly enriched.

The Court denies 3M's motion on this claim. Plaintiffs' unjust enrichment claim is pled in the alternative. This is permitted, even if the claims are inconsistent. *See, e.g., Segelbaum, Inc. v. MW Capital, LLC*, 673 F. Supp. 2d 875, 880 (D. Minn. 2009) (explaining that, at the motion to dismiss stage, plaintiff is permitted to pursue alternative theories that would provide remedies at law and equity). In addition, the allegations in the Amended Complaint are sufficient to state a claim for unjust enrichment. The Court

will revisit this issue as the case matures and the viability of Plaintiffs' other claims becomes clearer. This reasoning also applies to Plaintiffs' claims for unjust enrichment under each state's laws.

## VII.  Remaining State-Law Claims

The following claims have not been addressed by the Court above.

### A.      Georgia Fair Business Practices Act

Plaintiffs assert a claim under the Georgia Fair Business Practices Act ("GFBPA"), which prohibits "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce." O.C.G.A. § 10-1-393(a). Moreover, "'[c]onsumer transactions' means the sale, purchase, lease, or rental of goods, services, or property, real or personal, primarily for personal, family, or household purposes." O.C.G.A. § 10-1-392(a)(10).

3M argues that this statutory provision is only available to plaintiffs who are natural persons, and that the claim fails as to all Plaintiffs (both the individual dentists and the dental practices) because the allegedly deceptive activity did not take place in the context of a "consumer market." Plaintiffs, on the other hand, argue that 3M's conduct is of the type the GFBPA was designed to remedy. Plaintiffs assert that the GFBPA allows a business, as a consumer, to bring suit.

First, the definition of a consumer under the GFBPA is limited to natural persons. O.C.G.A. § 10-1-392(a)(6) ("'Consumer' means a natural person."); *see also Pasternak & Fidis, P.C. v. Recall Total Info. Mgmt., Inc.*, 95 F. Supp. 3d 886, 908 (D. Md. Mar. 25, 2015) (explaining that the Georgia General Assembly amended the definition of

"consumer," limiting it to natural persons).  Therefore, dental practice Plaintiffs cannot state a claim under this statute.

Second, the GFBPA prohibits deceptive activity that takes place in the context of a "consumer market."  O.C.G.A. §10-1-393(a).  *See also Catrett v. Landmark Docre, Inc.*, 560 S.E.2d 101, 105 (Ga. Ct. App. 2002) (noting that to fall under the GFBPA, the deceptive activity must take place in the consumer marketplace).  "Consumer transactions are defined in the act as 'the sale, purchase, lease, or rental of goods, services, or property, real or personal, primarily for personal, family, or household purposes.'"  *Wells Fargo Bank, N.A. v. Moore*, Civ. No. 12-1738, 2012 WL 12952733, at *5-6 (N.D. Ga. Dec. 12, 2012) (quoting O.C.G.A. § 10-1-392(a)).  Here, Plaintiffs purchased Lava Ultimate blocks for the purpose of using the blocks for dental services on their patients, which is plainly not "primarily for personal, family, or household purposes." Accordingly, Plaintiffs' claim under the GFBPA is properly dismissed.[12]

### B.    New York General Business Law §§ 349-50

The New York General Business Law prohibits deceptive practices "in the conduct of any business, trade or commerce."  N.Y. Gen. Bus. Law §§ 349, 350; *see also Karlin v. IVF Am.*, 712 N.E.2d 662, 665 (N.Y. 1999).  Claims under §§ 349 and 350 require a plaintiff to allege that the defendant engaged in a "consumer-oriented" act or practice.  *Haag v. Hyundai Motor Am.*, 969 F. Supp. 2d 313, 316 (W.D.N.Y. 2013); *Cruz*

---

[12]    The Court need not and declines to consider 3M's additional arguments in support of the dismissal of the GFBPA claim.

*v. NYEX Info. Res.*, 703 N.Y.S.2d 103, 107 (N.Y. App. Div. 2000). These are broad, remedial statutes that apply to "virtually all economic activity." *Icahn Sch. of Med. at Mount Sinai v. Health Care*, 234 F. Supp. 3d 580, 586 (S.D.N.Y. 2017). 3M argues that these statutory claims fail because the Amended Complaint does not allege that 3M engaged in consumer-related conduct. Plaintiffs argue that the scope of "consumer-oriented" conduct under the New York Business Law covers a broad array of practices that impact consumers at large. In *Mount Sinai*, the court held that alleged misrepresentations made by defendant to a medical school and not a "consumer" (or patient) could still constitute "consumer-oriented" conduct under the General Business Law where the medical school alleged that it transmitted the alleged misrepresentations to its patients. 234 F. Supp. 3d at 586.

While the cases cited by Plaintiffs demonstrate a broad application of the General Business Law, they also reveal that "consumer-oriented" conduct can be demonstrated when an alleged misrepresentation made to a business is repeated to consumers. Here, however, Plaintiffs have not alleged that they repeated any of 3M's alleged misrepresentations to any of their patients. For this reason, the Court concludes that Plaintiffs have failed to sufficiently allege "consumer-oriented" conduct necessary to state a claim under the New York General Business Law. Therefore, New York Counts I & II are properly dismissed.

C.    **Washington Consumer Protection Act**

To prevail on a Washington Consumer Protection Act claim under Washington law, a plaintiff must demonstrate:  (1) unfair or deceptive act or practices; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in her or her business or property; and (5) causation.  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986).  3M argues that this claim fails because there is no public interest impact.  Specifically, 3M contends that it no longer sells Lava Ultimate for use in crowns and that Plaintiffs' claim is based on past conduct.  Plaintiffs argue, on the other hand, that there is a public interest impact here because 3M has failed to acknowledge that Lava Ultimate causes high failure rates and nothing prevents 3M from reintroducing Lava Ultimate into the market for use in crowns.

The Court finds that the Amended Complaint sufficiently alleges facts to establish that the conduct at issue had an effect on the public interest.  "[A] private dispute can affect the public interest if it is likely that additional plaintiffs have been or will be injured in exactly the same fashion."  *Birkholm v. Washington Mut. Bank., F.A.*, 447 F. Supp. 2d 1158, 1165 (W.D. Wash. 2006).  Here, Plaintiffs allege a widespread marketing campaign that affected numerous transactions.  While there are no allegations that the conduct is likely to be repeated in the future, it is plausible that additional plaintiffs have been injured.  Thus, the Court concludes that Plaintiffs have sufficiently pled this claim. The Court therefore denies 3M's motion to dismiss the Washington Consumer Protection Act claim.

## VIII.  Magnuson-Moss Warranty Claim

The Magnuson-Moss Warranty Act ("MMWA") provides a private, federal cause of action to "a consumer" who is damaged by an alleged breach of an implied warranty. 15 U.S.C. § 2310(d)(1).  "Consumer" is defined as "a buyer . . . of any consumer product."  *Id*. § 2301(3).  A "consumer product" is "any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes."  *Id*. § 2301(1).  3M argues that this claim fails because Lava Ultimate is not a consumer product.  Plaintiffs disagree and contend that Lava Ultimate is a consumer product—even if Plaintiffs are commercial buyers—because Lava Ultimate is used in dental crowns that are tangible personal property used by patients for personal use.

It is clear from the allegations in the Amended Complaint that Lava Ultimate blocks were not sold directly to patients and were not used by the purchasing dentists and dental practices for personal purposes.  Instead, the Amended Complaint makes clear that Lava Ultimate blocks were purchased by dental professionals who used a CAD/CAM machine to shape the block and then surgically place the blocks in patients' mouths during certain restorative dental procedures.  Plaintiffs do not allege facts that would demonstrate that Lava Ultimate is a consumer product.  *See, e.g.*, *In re Minnesota Breast Implant Litig.*, 36 F. Supp. 2d 863, 876 (D. Minn. 1998) (holding that implanted medical devices are not consumer products under the MMWA because they are not readily accessible to all consumers).  Therefore, Plaintiffs' MMWA claim is properly dismissed.

## IX.    Punitive Damages

Plaintiffs allege that they are entitled to punitive damages.  3M moves to strike all allegations requesting punitive damages because they are not supported by specific facts about the conduct that would warrant such an award.  3M points out that Plaintiffs' only allegation regarding the entitlement to punitive damages is conclusory.  (*See* Am. Compl. ¶ 203 ("3M's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.").)

In a diversity action such as this, punitive damages must be pled in conformity with Minnesota Statutes section 549.191, which requires a party seeking punitive damages to obtain the court's leave based on a prima facie showing.  Minn. Stat. § 549.191.  This requirement helps to screen out meritless claims for punitive damages. *See Healey v. I-Flow, LLC*, 853 F. Supp. 2d 868, 873-74 (D. Minn. 2012).  Here, Plaintiffs have not made such a showing.  Indeed, Plaintiffs acknowledge this and, instead, assert that they will seek leave of Court to amend their Amended Complaint at an appropriate stage of the case.  Therefore, pursuant to Federal Rule of Civil Procedure 12(f), the Court strikes all references to punitive damages in the Amended Complaint.

## ORDER

Based upon the foregoing, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Doc. No. [87]) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1.     California Plaintiffs' claim under the California Consumer Legal Remedies Act (California Count I) is **DISMISSED WITH PREJUDICE**.

2.     California Plaintiffs' claim under the Song-Beverly Consumer Warranty Act (California Count IV) is **DISMISSED WITH PREJUDICE**.

3.     Missouri Plaintiffs' claim under the Missouri Merchandising Practices Act (Missouri Count I) is **DISMISSED WITH PREJUDICE**.

4.     Plaintiffs' claims for fraud—Minnesota Count VIII, California Count VIII, Florida Count V, Georgia Count VI, Kansas Count V, Missouri Count V, New Jersey Count V, New Mexico Count IV, New York Count VI, Pennsylvania Count IV, Tennessee Count IV, Texas Count IV, and Washington Count V—are **DISMISSED WITHOUT PREJUDICE**.

5.     Plaintiffs' claims under the:  Minnesota Consumer Fraud Act (Minnesota Count I); California Unfair Competition Law (California Count II); California False Advertising Law (California Count III); Florida Unfair and Deceptive Trade Practices Act (Florida Count I); Kansas Consumer Protection Act (Kansas Count I); New Jersey Consumer Fraud Act (New Jersey Count III); New Mexico Unfair Trade Practices Act (New Mexico Count I); Texas Deceptive Trade Practices Act-Consumer Protection Act (Texas Count I) are **DISMISSED WITHOUT PREJUDICE**.

6.     Plaintiffs' claim under the: Minnesota Deceptive Trade Practices Act (Minnesota Count II); Minnesota Unlawful Trade Practices Act (Minnesota Count III); Georgia Uniform Deceptive Trade Practices Act (Georgia Count II); Georgia Fair Business Practices Act (Georgia Count I); General Business Law (New York Counts I

and II); and Magnuson-Moss Warranty Act Claim (Minnesota Count VI) are

**DISMISSED WITH PREJUDICE**.

      7.      3M's Motion to Strike Punitive Damages is **GRANTED**.


Dated:  March 1, 2018             s/Donovan W. Frank      
                                      DONOVAN W. FRANK
                                      United States District Judge